Coblentz v. Putifer.

KATE BELLE COBLENTZ, *Appellee*, v. DAVID PUTIFER et al., *Appellants*.

No. 17,773.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Medical Experts—Capacity to Make Deeds—Unsound Mind—Opinions*. While medical experts may properly answer whether in their opinion from the conditions shown by a proper hypothetical question a person was of unsound mind, it is not competent for them to give an opinion as to whether such person had sufficient mental capacity to make a deed in controversy. Capacity to make a deed is a mixed question of law and fact for the jury to determine on proper evidence and instructions and not for witnesses to decide.

2. ———— *Transactions with Deceased—Negative Questions Competent*. When it is alleged that a deed was procured by the undue influence of a son upon his mother, he may state whether at any time he asked or requested her to make such deed, when the manifest object of the question is to show that he did not. To state that he did not ask or request such deed is the very opposite of testifying concerning a transaction or communication with the deceased grantor.

3. SETTING ASIDE DEED — *Reasonableness — Jury—Instructions*. It is not for the jury to say whether a deed was reasonable or unreasonable, and unless they are properly instructed as to the meaning of reasonable it is error to charge that they may consider reasonableness as a basis for setting it aside.

4. ALIENATION OF PROPERTY—*Rights of the Owner—Jus Disponendi*. A property owner free from undue influence, of sufficient mental capacity to convey property, has the right to decide for himself whether a deed made by him is reasonable.

5. SPECIAL QUESTIONS—*Refusal to Submit—Error*. When only seven special questions fairly covering the vital questions raised by the pleadings in a cause are requested the court should submit them all and not select three from the number to the exclusion of the others.

Appeal from Reno district court. Opinion filed July 6, 1912. Reversed.

*F. F. Prigg,* and *C. M. Williams,* both of Hutchinson, for the appellants.

*Frank L. Martin,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff brought this action to set aside three deeds to her three brothers on the ground that they were procured by the defendants acting together jointly by the exercise of undue influence on her mother at a time when she was not of sound mind and when by reason of her physical and mental condition she was not capable of making deeds of conveyance and contracts and did not know and realize the contents of the deeds or the purport thereof. She also prayed for partition, alleging that she was the owner of one-fourth of the estate involved, and for rents and profits and an accounting for personal property alleged to have been converted by the defendants. Trial was had by jury, resulting in a verdict and judgment for the plaintiff, findings being made that at the time the deeds were executed the grantor did not understand the nature and effect thereof, that she executed them by reason of undue influence exercised by David Putifer. Complaint is made that the court erroneously permitted a jury to sit in the case and improperly admitted certain testimony, and erroneously excluded certain testimony offered by the defendants, that error was committed in giving and refusing instructions, and in refusing to grant a new trial.

It appears that the father of the parties died in 1895, leaving his widow, Lucy Putifer, and the parties hereto, living upon a small rented farm in Reno county with very little personal property; that shortly after his death the plaintiff, having reached her majority, went out to work for herself, and after remaining around the neighborhood about one year went away, her whereabouts being unknown to her mother and brothers for a number of years. She never afterwards

lived at home, and visited there but once during her
mother's lifetime, when upon the occasion of her mar-
riage she remained there about two weeks, never re-
turning again except to attend the funeral of her
mother. The three sons continued to live with their
mother and remained unmarried until her death in
November, 1906. They were all younger than the
plaintiff and at the death of their mother David was
27, Robert 22, and Solomon's age was between that of
his two brothers. Sometime after the father's death
these boys rented a section of land and put in a large
crop, and continued to farm this and other land until
about 1890 when they and their mother purchased a
quarter section for $750, borrowing $550 of the money,
and shortly afterwards purchased another quarter for
$1600, going in debt for a portion of the purchase
price. On this land they continued to reside until the
mother's death. The title was taken in her name. The
land appears to have been worked and managed in
common and treated as joint property, the mutual earn-
ings and accumulations going to pay mortgages, and
for personal property, stock and farm machinery ac-
cumulated upon the land. In the spring of 1906 the
mother had pneumonia, from which she recovered leav-
ing a bronchial affection and cough which continued.
In November, 1906, about the first of the month, she
became sick and after about six days died. Some five
days prior to her death she procured an attorney to
come to her place and write two deeds and a bill of
sale of the personal property, deeding to David 100
acres of land upon which the home and improvements
were located, and to Robert and Solomon each an un-
divided one-half of the remaining land, also a bill of
sale of all the personal property to the three sons
jointly. On the 8th of the following November this
action was begun, resulting in a verdict for the plain-
tiff which was by this court reversed (*Coblentz v.
Putifer,* 81 Kan. 905, 106 Pac. 1011), after which an

46—87 KAN.

amended answer was filed specifically denying in-
capacity and undue influence and alleging that the
property had been acquired through the joint earnings,
industry and perseverance of the defendants and that
the title was taken in the name of the mother for con-
venience only, and that the conveyances were made by
her in order to place the title where it properly
belonged.

The question of mental capacity was vital in the case,
and it is contended by the defendants that the verdict
and the findings of the jury are unsupported by the
evidence and contrary thereto. But whatever our views
might be concerning the weight and credibility of the
evidence, there was sufficient conflict to remove from
us the possibility of holding that the result was en-
tirely unsupported.

As there was an allegation of conversion of personal
property it can not be said that the court erred in
granting plaintiff's request for a jury. Complaint is
made about the form of the hypothetical question pro-
pounded by the plaintiff to some of her witnesses, but
we are unable to find that it contained elements not
indicated by the evidence in the case so as to render it
incompetent.

Two physicians were asked to give their opinions as
to the effect the supposed sickness indicated by the
testimony would have upon the mind of the patient,
and they answered that her mind would be cloudy; one
that she would not be herself at all, and the other that
it would surely disturb the mind very materially. The
further question was then asked whether, considering
the conditions stated in the hypothetical question, she
would be competent to make deeds of conveyance and
dispose of her property and transact other important
business affairs of life, to which one of the physicians
answered: "In my judgment she would not be." The
other was asked whether the patient would be compe-
tent to make deeds of conveyance and bills of sale con-

veying and disposing of all of her property, to which
he answered: "I would think not." The defendants
insist that these questions invaded the province of the
jury and called upon the witnesses to decide the very
question at issue, and that while it was proper to take
their opinions as to the effect the alleged sickness would
have upon the mental capacity of the patient, their
opinions as to her capacity to make the conveyances in
question were clearly incompetent. Numerous author-
ities are cited which hold that it is not competent for
witnesses in cases of this kind to give their opinions
as to the mental capacity of the person in question to
execute instruments in controversy, for the reason that
the mental capacity of the maker of a deed is a question
of fact to be passed upon by the jury, while the legal
effect of an instrument is a question of law for the
court, and that no witness should be permitted to give
an opinion which would have the effect, if followed by
the jury, of determining matters of law as well as
matters of fact. When, however, a witness has been
permitted to give his opinion concerning the effect of
certain mental and physical conditions upon the mind
of the patient and has stated that it would be impaired,
it would seem a natural thing to then inquire whether,
in his opinion, it would be impaired sufficiently to in-
capacitate the person for making the conveyances in
question, because what the jury is supposed to need
by way of expert opinion or information is not only the
fact whether the mind was impaired, but, if so, the
degree of impairment also as applied to the case in
hand. In fact the very purpose of expert testimony is
to advise the jury concerning a matter which may not
be determined by the concrete facts of the case or from
such facts in connection with their own knowledge in
common with the rest of mankind. In condemnation
cases experts are called to give their opinions as to the
value of the land, and while they are not permitted to
advise the jury what sum they should award by way

of damages, they are always permitted to advise the jury what they believe the land was worth before and after the condemnation, which is exactly the same thing in effect, notwithstanding all of the refinements and attempted distinctions found in the reported cases. In section 1921 of volume 3 of Wigmore on Evidence we find the following:

"Another erroneous test, prevalent in some regions, and nearly allied to the preceding one, if not merely another form of it, is that an opinion can never be received when it touches 'the very issue before the jury.' . . . The fallacy of this doctrine is, of course, that it is both too narrow and too broad, measured by the principle. It is too broad, because, even when the very point in issue is to be spoken to, the jury should have help if it is needed. It is too narrow, because opinion may be inadmissible even when it deals with something other than the point in issue. . . . When all is said, it remains simply one of those impossible and misconceived utterances which lack any justification in principle."

In section 1958, the author, after observing that testamentary capacity is a matter of law depending somewhat upon the nature of the business and that questions should be framed so as to require the expert to state the measure of the testator's capacity in his own language, says that a difficulty arises; that it is desirable to obtain a compact statement of the general mental condition, and that it is a better indication for the witness to say whether he would or would not trust him to buy property intelligently than to say he once did this or that wise or foolish act; that the general statement often conveys a more accurate understanding than a rehearsal of many single acts. "Nevertheless, in distinguishing between the proper and improper forms of statement, an easy opportunity is offered for judicial quibbling. In the dilemma thus presented, the solution seems often to depend merely on whether the Court is disposed to stick at trifles and the forms of things, or to follow practical good sense."

But near the close of the section are these words: "By all Courts ·a mere abstract statement that the person was or was not 'capable' of making a will or a contract or a deed seems to be held improper; but there is a great variety of ruling upon other forms of statement." The essential difficulty with the question is that it involves not only an opinion as ·to mental capacity but the views of the witness as to what kind and degree of mentality is necessary to make an instrument valid or binding—and this must be a question of law and not one of fact. The objection to these questions should have been sustained.

Complaint is made that the court refused to permit each of the defendants to answer whether at any time he had asked or requested his mother to make the deed to him. An objection to this question was sustained because calling for a transaction and communication with a deceased person. We think the very opposite was the purpose of the question, that is, to show that there had been no transaction or communication of the kind, and that the testimony was competent. In fact practically this identical question was settled in *Murphy v. Hindman,* 58 Kan. 184, 48 Pac. 850, where it was said:

"The testimony given was not with respect to a transaction, but was simply a denial that a transaction was had." (p. 186.)

(See, also, *Gaston v. Gaston,* 83 Kan. 215, 109 Pac. 777; *Kerr v. Kerr,* 85 Kan. 460, 461, 116 Pac. 880.)

This evidence was material and its exclusion was prejudicial error.

Complaint is made of the eighth instruction, in which the jury were charged that in determining whether Lucy A. Putifer had sufficient mental capacity to execute the deeds in controversy or whether she was acting as the result of undue influence, they had a right to take into consideration her physical and mental condition, her relations to her children and the

grantees in the deeds, "the nature of the transaction of executing said deeds, the reasonableness or unreasonableness of such deeds, and every other fact and circumstance in evidence touching upon the question."

In *Blodgett v. Yocum,* 80 Kan. 644, 103 Pac. 128, a somewhat similar instruction had been given and this was held error. It was said:

"This instruction was erroneous. It practically told the jury that if they regarded the disposition which the deceased made of her property as unreasonable they might infer that at the time she executed the deeds she was of unsound mind or unduly influenced, or both. . . . A person of sound mind who is not unduly influenced may make disposition of his property by deed or will as he desires, without regard to its fairness or unfairness. . . . The instruction, however, authorized the jury to consider whether they would have made the same disposition of their property under the same circumstances; and, if they concluded that the disposition she made was unfair or unreasonable, it authorized them to infer from that fact alone that she was unduly influenced when she executed the deeds. This is not the law." (p. 646.)

While the instruction given was not as broad as the one in the Blodgett case, it did nevertheless without defining reasonableness authorize the jury to decide for themselves the reasonableness of the contract and use their own judgment thereon as a basis for setting it aside. It will not do to say that a person of sound mind may make any sort of conveyance he desires, but that if he makes a conveyance which appears to the jury·unreasonable they may infer therefrom that he was of unsound mind, or unduly influenced. Such a rule would put wills and conveyances not within the control of the person who had accumulated the property but within the control of strangers whose experiences and ideas might differ widely from those of the person who had exercised the *jus disponendi.* This action (*Coblentz v. Putifer,* 81 Kan. 905, 106 Pac.

1011) seems to have been reversed for a similar error
on the authority of *Blodgett v. Yocum,* supra.

While the court submitted to the jury the three ques-
tions already referred to, it refused to submit inter-
rogatories five, six and seven, which inquired whether
the property conveyed was accumulated by the labor
and management of the defendants, whether the plain-
tiff contributed anything towards procuring the same,
and whether a portion of the labor and industry of the
defendants which went to procure the property was
furnished after they arrived at majority. We do not
see why these questions were refused. They were cer-
tainly as competent as those submitted, and while such
matters are largely within the discretion of the trial
court, which discretion is often sought to be abused, we
think the defendants may rightfully complain of the
refusal in this instance. Other alleged errors are urged
which do not require comment, but for those already
indicated the judgment is reversed and the cause re-
manded for a new trial.