No. 20,391.

R. H. SILLIX, *Appellee,* v. ARMOUR & COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT — *Injuries — Offer of Employer to Settle—Refusal by Employee—No Bar ,to Future Action.* Refusal of an employee who has been injured to accept an offer of his employer to pay, under the compensation act, one-half of the average earnings until the employee is able to return to work, will not bar an action to recover under the compensation act, where at the time the offer is made there is a dispute between the parties as to whether the employee's disability is permanent or only temporary.

2. SAME—*Petition—Irrelevant Allegations—Not Considered—Not Prejudicial.* In this case the petition contained averments of matters which had no proper place in an action under the compensation law. No evidence was admitted in proof of the extraneous matters; the court charged the jury not to consider them, and the action was tried out as a compensation case. *Held,* there was no prejudicial error in refusing to strike the objectionable matter from the petition.

3. SAME—*Claim for Compensation—Presented in Time.* The evidence examined and held sufficient to show full compliance with the terms of the compensation act, which requires that a claim for compensation be presented within three months from the time of the injury.

4. SAME—*Demurrer to Petition Overruled—No Prejudicial Error.* Upon the facts stated in the opinion, it is held there was no prejudicial error in overruling a demurrer to the petition because of failure to allege that a claim for compensation was presented.

5. SAME—*Failure to Allege "Average Earnings"—Not Prejudicial.* Failure of the petition to allege the average earnings of the employee or other facts from which they may be computed, as provided by the compensation law, there being no motion to make the petition more definite and certain, is held not to have prejudiced the rights of the defendant.

6. SAME—*Expert Testimony Admissible.* In an action under the compensation act expert testimony of physicians is admissible to show that partial disability exists.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed November 11, 1916. Affirmed.

*William G. Holt,* and *James K. Cubbison,* both of Kansas City, for the appellant.

*David F. Carson,* and *W. W. McCanles,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Plaintiff brought this action to recover damages in the sum of $3000 for injuries alleged to have been caused by the defendant's negligence at a time when he was in its employ. Almost a year later an amended petition was filed which attempted to set up a cause of action under the compensation law. The prayer for relief was amended to ask compensation in the sum of $2496. The amended petition alleged that the accident was caused by the negligent act of one of defendant's agents, and that the injury sustained caused the plaintiff mental pain and anguish; it asked that $100 be allowed for medical expenses and also asked for a reasonable attorney's fee. The court overruled a motion to strike out these allegations. A demurrer to the petition was also overruled, and the action proceeded to trial as a compensation case. In the opening statement it was admitted that defendant as well as plaintiff were subject to the provisions of the compensation act. The petition alleged that no written notice of the injuries had been given, but that defendant had actual notice thereof a few minutes after the injury was received and therefore was not prejudiced by plaintiff's failure to give notice. The defendant objected to the introduction of any evidence and that was overruled. The jury returned a verdict in plaintiff's favor for $1257. Judgment was entered upon the verdict and defendant appeals.

The plaintiff was injured on the afternoon of the same day he began working for defendant. He was to receive $2 per day for ten hours work. He was engaged in repairing switches in an overhead tram or cage, which hung suspended from a track. A switch immediately behind the cage was left open and as the cage started back one end dropped down and plaintiff fell a distance of about fourteen feet, striking on a railroad track. He claimed that an eight-pound sledge hammer fell from the cage and struck him on the breast. He was given first aid treatment by Doctor Johnson, defendant's house surgeon at the plant. Several weeks after his injury he went to see the superintendent of the defendant and asked what was going to be done about his injury. The superintendent sent him to see Doctor Johnson, who had charge of such matters.

Sillix v. Armour & Co.

The doctor explained the workmen's compensation law to him, told him it did not provide payment for his injury, but that defendant would compensate him according to its terms, and meanwhile if he would go back to work as soon as he was able he would be given employment at the same wages. He also explained to plaintiff that there was $36 due him at the rate of $6 per week. The plaintiff said he thought he was entitled to more than $6 per week, and refused to take compensation under the act because he thought the law did not allow enough. He never went back to the Armour plant after that.

The first and principal complaint of the defendant is that plaintiff should not be entitled to recovery because he refused to accept payment or settlement under the compensation law, but demanded more than compensation for incapacity to labor. It is said that the defendant was anxious and willing to abide by the compensation act and the plaintiff refused to be bound by it; that he not only refused to accept the offer to pay him what the law allowed, but brought an action to recover damages for injuries sustained by the alleged negligence of the defendant, wholly ignoring the compensation act, which defines the rights and obligations of both parties. In this connection defendant insists that it was carrying out in good faith its established policy to abide by the provisions of the compensation act, and directs our attention to the records of the state, showing that it was among the first and largest employers of labor to come under the provisions of the act, and that it has never sought by litigation to defeat an employee claiming under the law. It is insisted that the case would not have been brought if the plaintiff had been willing to abide by the law and accept compensation according to its terms.

We fully agree with the contention of the defendant, that one of the purposes of the compensation act was to do away with litigation between employer and employee in adjusting compensation for injuries received in the course of employment, and that the law fixes the scale of compensation for permanent as well as partial disability, leaving the only question to be determined the extent of incapacity resulting from the injury. The wise provisions of the law have in many cases not been carried out, and the responsibility for the failure of the law in this respect is attributable sometimes to an

unwillingness of the employer to deal fairly with the employee; sometimes to the tendency of an injured employee to exaggerate the extent to which his earning capacity has been decreased, and unfortunately it often results from the activity of persons who seek to enhance the amount of compensation and share in it. There is, however, often reasonable ground for a dispute between the employer and the employee as to the extent of his injuries and the effect it will have on his earning capacity. We do not believe that on the facts in this case the plaintiff should be barred of his right to maintain his action because of his refusal to accept the compensation which Doctor Johnson told him the company was ready to pay. It is very clear from Doctor Johnson's own testimony that he believed at the time he was talking to the plaintiff that the latter was not injured to such an extent that his earning capacity would be permanently affected. The plaintiff believed that his injuries were more serious than the doctor thought they were, and that he would be permanently incapacitated to a partial extent. Doctor Johnson did not offer to pay him anything for permanent disability. His offer was to pay plaintiff half of his wages, or $6 per week, until he was able to come back to work, which the doctor believed would be in a short time. The plaintiff had a right to insist upon a settlement that would determine whether his disability was permanent, that is, how long it would probably continue, and the amount, if any, he was entitled to recover for such partial incapacity. Where the employer takes the position that there is no permanent disability, partial or otherwise, we see no reason why the employee may not maintain an action to have these questions determined, and at the same time refuse to accept payment offered for temporary disability. Perhaps plaintiff should have accepted the $36, but he was not obliged to do so. If he had accepted it, and the disagreement as to the duration of his disability remained unsettled, his acceptance would not have deprived him of the right to have the other question litigated. The duration of the incapacity of the injured employee is one of the important facts to be determined, and must be settled "as other questions of fact" are determined. (*Gorrell v. Battelle,* 93 Kan. 370, 376, 144 Pac. 244.) The compensation act expressly provides that a workman's right to compensation

may, in default of agreement or arbitration, be enforced by action in any court of competent jurisdiction. (*Ackerson v. Zinc Co.*, 96 Kan. 781, 153 Pac. 530; *Halverhout v. Milling Co.*, 97 Kan. 484, 155 Pac. 916.) In this case there was a default of agreement or arbitration, and the reason for it as explained by the fact that Doctor Johnson, to whom the plaintiff was referred, believed he was not partially injured to an extent that would be permanent, but on the other hand that in a short time he would be able to return to work fully recovered. The plaintiff believed the contrary. In *Ackerson v. Zinc Co.*, supra, and in *Halverhout v. Milling Co.*, supra, it was held that an attempt and failure by plaintiff to settle by arbitration is not a condition precedent to maintain an action. It necessarily follows that under the circumstances of this case plaintiff's refusal to accept the offer of Dr. Johnson should not bar the action.

The motions directed against the amended petition were well founded, and the court might have required plaintiff to recast the entire pleading. The averments as to negligence, mental pain and anguish, medical expenses and attorneys' fees had no appropriate place in the petition. (*McRoberts v. Zinc Co.*, 93 Kan. 364, 144 Pac. 247.) The case, however, was tried out as a compensation case; no evidence was admitted in proof of the extraneous matters, and the court charged the jury not to consider them.

Section 22 of the compensation law (Laws 1911, ch. 218, Laws 1913, ch. 216, § 6) requires that an injured employee shall present a claim for compensation within three months of the day he was injured, and expressly declares that the failure so to do shall be a bar. The evidence shows a full compliance with this provision. The claim is not required to be in writing. An oral demand is sufficient under the language of the statute. (*Gailey v. Manufacturing Co.*, 98 Kan. 53, 157 Pac. 431; *Knoll v. City of Salina*, 98 Kan. 428, 157 Pac. 1167.) The plaintiff went to the superintendent of defendant and asked what was to be done about paying him. He was referred to Doctor Johnson, to whom he presented a claim. The difficulty arises over the failure to allege in his petition that he had presented a claim. Since that was a condition precedent, he should have pleaded compliance. It would not do,

however, to reverse the judgment and order a new trial merely to permit the petition to be amended so as to allege presentation of the claim. The claim was presented, and defendant had every opportunity to investigate the nature of plaintiff's incapacity. We conclude that defendant was not prejudiced by the failure to sustain a demurrer to the petition, and the objection to the testimony.

The petition fails to disclose any facts upon which the average weekly earnings of the plaintiff could be computed. The statute provides that the average earnings are to be computed on the average rate per week which the workman was being remunerated for the fifty-two weeks prior to the accident, and where this becomes impracticable, by reason of the shortness of the time during which the workman has been employed, then the compensation is to be based on the average weekly amount which, during the twelve months previous was earned by a person in the same grade or class of employment in the district where plaintiff was employed. Plaintiff had been at work but one day when he was injured, and the petition should have alleged what were the average weekly earnings of persons in the same grade or class of employment during the previous year. All the petition stated as to his earnings was:

"That said plaintiff was, on or about the 4th day of June, 1913, in the employ of said defendant, and had been in such employ for some time prior thereto without interruption and received as compensation for his said services the sum of twelve ($12) dollars per week in said employment."

This was, perhaps, sufficient to get past a demurrer; there was no motion to make more definite and certain, and the omission to plead the facts properly could not have prejudiced the rights of the defendant. We think the testimony of defendant's foreman as to the customary prices for labor in that kind of employment for a year or more, which he said ranged from $1.75 to $2 a day in the same line or class of employment, was sufficient evidence of the average wages paid in the same grade and class of employment for the previous year.

There was no error in sustaining an objection to the question asked of Doctor Gray. He testified to substantially the same facts embraced in the question and the offer of proof. Over defendant's objection, Doctor Faust was permitted to

testify that a working man, used to muscular labor, would have his usefulness impaired to a certain extent by the condition he found in the bones of the plaintiff, and that there would be a limitation of action in the movement of the arms, especially in gripping in certain positions. It is complained that this was trenching on the functions of the jury as well as speculation on the part of the doctor. *Coblentz v. Putifer,* 87 Kan. 719, 125 Pac. 30, is cited in support of the contention. In that case medical experts were permitted to testify, from conditions embraced in a hypothetical question, that a person was of unsound mind, which was held proper; but it was ruled not competent for them to give an opinion as to whether such person had sufficient mental capacity to make a certain deed of conveyance. All that the witness in the present case testified to was that certain physical conditions would tend to impair a workman's usefulness to a certain extent. The witness did not attempt to state his opinion as to the extent of such partial disability. We see no reason why expert evidence of physicians may not be offered in proof of the fact that partial disability exists.

At the defendant's request, the court instructed the jury to find for defendant, if they believed from the evidence that defendant tendered plaintiff compensation as fixed by the statute, "for the entire period for which he was incapacitated. totally or partially," and that plaintiff refused to accept. It is said that the jury disregarded this instruction, and that it was based upon uncontradicted evidence. The contention is that the court did not intend to charge the jury that the tender should cover future incapacity, but only the period of incapacity up to the time of the tender. If such was the intention of the court, the instruction was wrong. As we have seen, plaintiff had a right to refuse the tender, if there was a disagreement between him and the defendant as to his future incapacity. We think the court and the jury understood the instruction to refer to a tender of compensation for the entire period during which he was, in fact, incapacitated, either totally or partially.

There were some verbal inaccuracies in the language of the instructions as to the method by which the jury should determine the amount of compensation, but as a whole the in-

structions followed substantially the provisions of the compensation law. Besides, the jury were not misled, since it appears they allowed the compensation at the lowest rate under the statute.

The judgment is affirmed.