Sillix v. Armour & Co.

---

No. 20,391.

R. H. SILLIX, *Appellee,* v. ARMOUR & COMPANY, *Appellant.*

OPINION DENYING A REHEARING.

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Injuries—Dispute as to Claim for Damages—Action Maintainable.* It is not necessary in order to constitute a dispute between the parties that the employee should state in precise terms just what he demands, or that the claims of either party be stated succinctly and in detail, provided there be a lack of agreement or arbitration. The employer may admit the injury and his liability generally under the compensation act, but if he and the injured employee do not agree as to the nature and extent of the injuries, so far as these things affect the duration of the disability, and the differences between them are not submitted to arbitration, a dispute exists which authorizes the employee to maintain an action to have the facts determined.

2. SAME—*Dispute—Right of Action—Defendant's Answer—Estoppel.* Where the employer raises by his answer the question of the duration and extent of the workman's incapacity, and offers evidence in support of such answer, he can not be heard to say that there was no dispute at the time the action was commenced.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion denying a rehearing and modifying judgment filed January 6, 1917. (For original opinion of affirmance see *ante,* p. 103, 160 Pac. 1021.)

*William G. Holt,* and *James K. Cubbison,* both of Kansas City, for the appellant.

*David F. Carson,* and *W. W. McCanles,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: It is insisted a rehearing should be granted on the ground that the law declared in the first paragraph of the syllabus is manifestly based upon the assumption of two facts, *first,* that defendant offered to pay plaintiff one-half his average earnings only *"until he was able to come back to work,"* and *second,* that a *dispute* existed as to whether plaintiff's disability was permanent or only temporary; and it is contended the record contains no evidence upon which to base either assumption. It is also contended that the court misunderstood defendant's claim. In the opinion it was stated that defendant's principal complaint was that plaintiff ought not to recover because he refused to accept "payment or settlement" under the compensation law. In the petition for rehearing it is now insisted that defendant did not contend that plaintiff refused "a settlement."

Taking up the last contention first, we have only to say that we used the words *"payment or settlement"* as meaning the same thing, just as defendant in his original brief used them where he complained that "no payment to, or settlement with plaintiff was possible, because he scorned the law and refused to be bound by it." Dr. Johnson, who was the defendant's adjuster and to whom the plaintiff was directed to go, testified: "I talked to him about settlement."

Was there evidence upon which to base this statement in the opinion: "His offer was to pay plaintiff half of his wages or $6 per week, *until he was able to come back to work,* which the doctor believed would be in a short time." (*Sillix v. Armour & Co.,* ante, p. 103, 106, 160 Pac. 1021.) We were not attempting to quote the language of the witnesses, but merely the substance. Doctor Johnson's testimony is that he told plaintiff—

"He could draw his compensation every two weeks at the rate of six dollars a week *as long as it was necessary for him to be off. As soon as he was able to go back to work,* and do light work of any kind I would

take it up with the superintendent and see if he could not give him a light job where he could handle the work and at the same time draw his full pay."

We are unable to discover any difference between the meaning of the expression "as long as it is necessary for him to be off" and the expression "until he was able to come back to work."

It is said that the evidence "conclusively proves that Doctor Johnson offered to pay him [plaintiff] one-half his wages as long as he was totally disabled, for a period of eight years, if necessary." In support of this, defendant quotes the testimony of Doctor Johnson, which, however, is not the only evidence to be considered. Doctor Johnson testified that he had a pamphlet copy of the compensation law in his desk, and took it out and read it to the plaintiff and told him that the law applied and that the company was working under the law; that he explained to plaintiff that "if it was necessary for him to be absolutely and totally disabled for eight years he was entitled to half for that length of time." The plaintiff testified that Doctor Johnson did not have the law there and did not read it to him, but told him that the law allowed "so much for an arm broke, so much for a leg broke, and so much for this and so much for that," etc.

It is said that no evidence can be found tending to prove that there was any dispute between Doctor Johnson and plaintiff as to the extent of plaintiff's incapacity. It is true the word "incapacity" was not used in the conversation, and plaintiff did not assert the extent to which he claimed he was injured. He testified that at that time he did not know there was such a thing in the law as "partial incapacity" or "total incapacity," and Doctor Johnson says that he did not tell him about partial incapacity, because he did n't believe that plaintiff would ever be partially incapacitated. As stated in the former opinion, we think the evidence shows that Doctor Johnson believed the plaintiff was not very much hurt and would soon be able to return to work, and that the plaintiff thought his injuries were more serious. Plaintiff's testimony is he told me he "wanted me to go to work then; I told him I was n't able."

It is not necessary in order to constitute a dispute between the parties that the employee should state in precise terms

just what he demands, or that the claims of either party be stated succinctly and in detail, provided, there be a lack of agreement or arbitration. The employer may admit the injury and his liability generally under the compensation act, but if he and the injured employee do not agree as to the nature and extent of the injuries, so far as these things affect the duration of the disability, and the differences between them are not submitted to arbitration, a dispute exists which authorizes the employee to maintain an action to have the facts determined.

Under the English workmen's compensation act, before an application for compensation can be filed with the county court judge or before application for arbitration is competent there must be a dispute between the employee and the employer as to the latter's liability. In *Higgins v. Poulson* (1911) 5 B. W. C. C., n. s., (Eng.) 66, it was held that there was a dispute at the time of the application so as to give the county court judge jurisdiction, notwithstanding the employer admitted liability and present total incapacity and submitted to an award of 10s. per week during total disability (the amount payable during partial incapacity to be settled thereafter). In *Cooper v. Wales, Limited,* (1915) 31 Times L. R. (Eng.) 506, it was held that there was a dispute, although the employer admitted the liability to pay compensation during total incapacity, but refused to admit his liability to pay compensation in event of partial incapacity, and the workman declined to accept an admission limited to total incapacity only.

Besides, it appears from the record that there was and still continues to be a dispute between the plaintiff and the defendant as to the nature, duration and extent of plaintiff's injuries and whether or not he was partially incapacitated for work from about four weeks after he received his injuries. In his petition plaintiff alleged permanent injuries and that there had been no agreement or arbitration with reference thereto. The defendant filed an answer consisting of a general denial, and offered evidence of physicians and others tending to show that a few weeks after the accident there was nothing the matter with the plaintiff. Having contested all through the litigation the claim of plaintiff as to the extent of his injuries and the duration and extent of his incapacity, de-

fendant can not be heard to deny the existence of a dispute as to the facts. It has been held that "Where the employer raises the question of duration of incapacity by his answer, he can not be heard to say that there was no dispute at the time of the application." (*Barron v. Carmichael* [1912] 5 B. W. C. C., n. s., (Eng.) 436).

Plaintiff's wages amounted to $12 per week, and there was evidence of the foreman in that department to the effect that this was about the average paid for that kind of employment for the previous year. In one instruction the court, after stating the manner in which the average weekly earnings of plaintiff were to be determined, because he had not been employed by defendant for fifty-two weeks prior to the injury, concluded with the statement that the jury might allow a sum estimated at not less than $6 nor more than $12 for every week of such total disability. We thought the instructions, considered as a whole, explained that the jury could not allow as much as $12 a week, and adopted as plausible a computation offered by plaintiff's counsel, which seemed to support the verdict. This is complained of in the petition for rehearing and we have reëxamined defendant's contention in this respect.

Plaintiff was injured June 4, 1913, and his own testimony is that he was able to go to work on the 21st day of July, 1913, and had worked or been able to work all the time since then, receiving wages from $1.75 to $1.85 per day during most of that time. The trial was on August 2, 1915. We think there is no force in the suggestion that the verdict of $1257 might have been arrived at by allowing him $12 per week for 100 weeks, or $9 a week for 139 weeks. These are some of the computations offered by defendant as possible explanations of the verdict. According to plaintiff's admissions he was able to go to work eight weeks after he was injured. In some of the instructions the court charged that he could not under the compensation act recover anything for the first two weeks following his injury; in other instructions the jury were told they might allow for total disability from the date of the injury. If the jury were misled by the statement in one instruction, that they might allow $12 a week for total inca-

pacity, the most that can be said is that they allowed for eight weeks at a rate of $6 per week more than the compensation act authorizes for total disability. Because of the possibility that the jury may have been thus misled, plaintiff will be given the option of accepting ·a judgment modified by reducing the amount $48, ·or taking a new trial. In all other respects the judgment will be affirmed.