No. 20,833.

IDA NORDMAN et al., *Appellants*, v. SARAH BERTHA NORDMARK,
*Appellee.*

No. 20,834.

IDA NORDMAN et al., *Appellants*, v. SARAH BERTHA NORDMARK,
*Appellee.*

### SYLLABUS BY THE COURT.

WILL—*Testamentary Capacity of Testator—Undue Influence—Special
Findings—Evidence.* An attack is made upon a will upon the grounds
of lack of testamentary capacity in the testator and that its execution
was procured by undue influence, and upon an examination of the
record it is held that the special findings made by the trial court are
sufficiently specific and complete, and also that the findings which in
effect uphold the validity of the will are supported by the evidence.

Appeal from Republic district court; JOHN C. HOGIN, judge.
Opinion filed May 12, 1917. Affirmed.

*Nelson J. Ward,* of Belleville, for the appellants.
*J. M. Livingood,* of Belleville, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In 1906 and when he was 81 years old,
Charles Nordmark married Sarah Bertha Johnson, and they
lived together until his death in 1912. His first wife died in
1904, and four children had been born of that marriage. A
few days before his death he executed a will giving all of his
property to his wife except a gift of one dollar to each of his
children. After his death actions were brought by the children
against the widow, Sarah Bertha Nordmark, one to annul the
marriage contract with their father, and to set aside a deed
executed by him before his death, and also to compel the de-
fendant to turn over the proceeds of certain certificates of
deposit that had been given to her, upon the ground that Nord-
mark was incapable and mentally irresponsible when these
transactions were had. The other action was brought to set
aside the will executed by Nordmark, and it was alleged that
he was mentally incapable of making a will at the time it was

made, and also that it was procured through duress and undue influence exercised over him by the defendant. Trials of the cases resulted in judgments in favor of the defendant. On appeal the judgment upholding the validity of the marriage contract was affirmed, but the remaining parts of the judgment were reversed because of the refusal of the court to make fuller findings of fact upon the testimony in the case. It was ruled, however, that retrials of the cases were not necessary, but that the court should make the additional findings upon the evidence already taken, and the cases were remanded for that purpose. (*Nordman v. Johnson*, 94 Kan. 409, 146 Pac. 1125.) Upon the return of the cases to the trial court additional findings were made along the line indicated in the opinion of this court; and the plaintiffs, still complaining, say that the findings are incomplete and insufficient, especially as to the testamentary capacity; and there is a contention that the additional findings made are not supported by the evidence.

An examination of the special findings made by the court shows them to be sufficiently specific and complete. Among other things it was found that while the testator was advanced in years and feeble in health when the will was executed, he was able to be up and about the house and was not mentally weak. It is true that another wrote his name while he held the pen as the mark was being made. This method of signing, it appears, was adopted partly because of physical weakness in guiding the pen, but also because he was unaccustomed. to writing the English name Charles, as he had usually written it Carl after the manner of people of his nationality.

On the question of undue influence alleged to have been exercised upon him by the defendant, it was found that Nordmark and his wife had lived happily together, that she was a good and faithful wife and possessed his confidence, and while she assisted him in some business affairs, particularly when his advanced age or the state of the weather made it more suitable for her to do the work, he always controlled his business affairs and was never controlled nor unduly influenced by his wife. It was specifically found that the will was the free act of the testator, that it was not made at her instance or dictation, nor because of any influence exerted by her. It was

found, too, that she had done nothing to estrange him from his children nor to induce him to believe that they cared nothing for him, that she did not forbid them to visit their father nor induce him to believe that they did not wish to see him, and also that she did not by any representations endeavor to get control of his property. There was a finding that the certificates were transferred to the defendant with the testator's consent on the consideration of love and affection, and that this and the other transactions were brought about without any misrepresentation, fraud or undue influence on the part of the defendant.

The special findings being sufficiently complete and specific on the issues involved, the only question remaining is the sufficiency of the evidence upon which the findings were based. In view of the evidence in the record this can hardly be regarded as a serious question. While there is some conflict in the testimony, there is abundant proof tending to show the testamentary capacity of Nordmark. There is testimony enough that he was capable of transacting ordinary business and had the memory and the mind essential to the making of a valid will. Nor is there any lack of proof to support the finding that at the time the will was executed the testator was free from any restraint or undue influence exerted upon him. The relations between him and his wife, as we have seen, were confidential and harmonious, but the fact that they were tied together in love and confidence during the marriage as well as by the marriage contract does not raise a presumption that undue influence was exercised upon him, nor does the fact that there was an opportunity and a motive to exercise undue influence in the making of the will warrant the inference that it had been exercised. (*Ginter v. Ginter*, 79 Kan. 721, 101 Pac. 634.) The testator had the right to dispose of his property as he pleased. Apparently he understood the extent of his estate and the claims of his wife and children upon his bounty, and he deliberately made a disposition of his property, giving the most of it to his wife. The testimony is abundant to show that the instrument was an expression of his own will and purpose, and that it was executed free from any improper influence or control by the defendant or by any one else.

The judgment in each case is affirmed.