THE STATE OF KANSAS, *Appellee*, V. CHARLES
NORDMARK, *Appellant.*

No. 17,267.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Expert Testimony—Firearms.* A person who has acquired special knowledge and skill as to the use of firearms, and by experience, observation and practice has learned the effect of shots and bullets cutting through limbs or shrubs, is competent to testify whether a certain shrub or limb was cut by a bullet, and also whether certain empty shot shells had been loaded with large or small shot.

2. HOMICIDE—*Circumstantial Evidence.* The nature, location and physical characteristics of the scene of the homicide, and the conditions existing in the immediate vicinity, may be shown in evidence on the trial of the one charged with the crime as a part of the history of the transaction; and in the present case it is *held,* that the court was warranted in receiving in evidence empty shells found near the place of the homicide, a limb of a tree which stood near the place and which appeared to have been cut by shot fired from a gun, and photographs of the scene of the homicide.

3. CRIMINAL LAW—*Evidence Proving Another Offense as Well as the One Charged.* Evidence which fairly tends to prove the felonious killing of the deceased should not be excluded because it may tend to prove that others were killed by the defendant at the same time and by the same means.

4. NEW TRIAL—*Statement by the Court of Reasons for Denying Motion.* In denying a motion for a new trial the trial court is not required, on the request of the defendant, definitely to state the facts and circumstances brought out in the testimony which, in his opinion, support the different elements of the offense of which the defendant was convicted.

5. ———— *Newly Discovered Evidence.* A new trial should not be granted because of newly discovered evidence unless it is material and such as leads the court to think that it would probably produce a different verdict.

6. HOMICIDE—*Circumstantial Evidence—Corpus Delicti—Guilty Agency.* In a prosecution for murder the *corpus delicti* and the guilty agency of the defendant may be proved by circumstantial evidence, and upon an examination of all the evidence in this case it is held to be sufficient to support the verdict finding the defendant guilty.

Appeal from Republic district court.   Opinion filed April 8, 1911.   Affirmed.

*David Ritchie,* for the appellant.

*John S. Dawson,* attorney-general, and *W. D. Vance,* county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   Charles Nordmark was charged with having murdered Alexander Lindahl on March 26, 1910, and upon a trial he was convicted of murder in the second degree.   On this appeal the principal complaint is that the verdict of the jury is not sustained by the evidence.

There was no eyewitness to the killing, and in this, as in most cases where conviction rests on circumstantial evidence, there is a claim that the guilt of appellant is not shown with the certainty which is necessary to a conviction.   It was shown that Nordmark and Lindahl lived on adjoining farms and that between them there had been a bitter hatred for some time, arising mostly from the fact that Nordmark had charged Lindahl with stealing his property, and it had been demonstrated that Lindahl had stolen many articles belonging to Nordmark and had committed numerous depredations on his property.   Frequently Nordmark had expressed the opinion that Lindahl should be killed and made threats of shooting him, and often he had expressed the opinion that he could not get legal redress for the wrongs inflicted on him by Lindahl, but that he would "get him," and on the night before the killing a threat of this kind was made.   It appears that on the afternoon of March 26, 1910, Lindahl and his two children went down to his boat landing on the Republican river, which was near the corner of the Nordmark farm.   Nordmark was at work near the landing about the time the killing was done.   About four o'clock that afternoon two witnesses, who were

within a mile of the landing, heard three shots fired in the locality of the landing, and one of them saw smoke float out over the river, at that place, as though emanating from the shooting. Three persons, Lindahl and his two children, were shot and killed. About five o'clock the following day Percy Shivers and John Weber, who were coming up the river, discovered Lindahl's motor boat at a point about forty rods below the boat landing. It was at the bank, in still water, and on the lower side of a sand bar which extended out into the river about forty or fifty feet, and over which it was impossible for the boat to have drifted. In it were the bodies of the two children, and with them was Lindahl's dog, which was alive. The following morning the body of Lindahl was found, submerged in water about three feet deep, on the up-stream side of a willow tree which lay in the river near the west bank. The point where the body was found was seventy yards below the landing, and the partially submerged tree was the first obstruction that would be met by a floating object below the landing. Lindahl's cap was also found lodged on a twig of the submerged tree, almost directly over the place where his body was found. Lindahl had been killed by buckshot, and the children also had been killed by the same kind of shot. The course of the shots was in a downward direction and the theory of the state is that they had been fired from the same position. A small dogwood tree, which grew on the bank of the river, between the Nordmark field and the landing, appeared to have been cut by buckshot. Shot of the same kind were found imbedded in the boat. Three empty shot shells were found near the landing, such as would fit a twelve-guage shotgun, and a gun of this kind, loaded with buckshot, was found in the Nordmark house, and an examination of it showed that one of the barrels had been recently used; but it was also shown that Lindahl and others had guns of this kind, and shells loaded with buckshot were found

in the houses of both Lindahl and Nordmark. Lindahl and his two children started for the river on the afternoon of the alleged killing to look after his traps, and were seen by his wife on their way to the river. The little girl was carrying an oil can, which was afterward found near the landing. In the boat were found trap stakes, recently cut, and small trees from which the stakes had evidently been made had been cut near the landing.

The inference drawn by the state from the facts, not all of which have been stated, is that just as Lindahl was embarking or landing the boat Nordmark, who it is conceded was working in an adjoining field and who on the night before had threatened to kill Lindahl, fired the shots which killed the Lindahls; that Lindahl's body fell into the water and floated to the spot where it was found; that the bodies of the children remained in the boat, which was carried down by the current, and when the boat reached the sand bar it was caused to swing around into the quiet water, where it lodged. Nordmark conceded that there was animosity between himself and Lindahl and did not deny the threats mentioned, but he did deny that he had anything to do with the killing of the Lindahls. His theory was that Lindahl might have quarreled with other parties who were boating or fishing on the river and had been killed by them, and that they placed the bodies near the Nordmark place so as to direct suspicion toward him.

There is a complaint about the admission of testimony by witness Dunlap to the effect that the shrubs or underbrush near the landing had been severed by buckshot, and also that the empty shells found near the landing had been loaded with buckshot. If a witness has acquired peculiar knowledge or skill, by experience, observation or practice on a subject with which the mass of mankind is not supposed to be acquainted, he may give his opinion on it. Expert opinion evidence is admitted as to the use and effect of firearms by one

who has had experience and has special knowledge on that line. (*The State v. Baldwin,* 36 Kan. 1; *The State v. Jones,* 41 Kan. 309; *The State v. Asbell,* 57 Kan. 398; 18 Cyc. 1505.) The witness had used firearms for forty years and had observed the results of shot and bullets cutting through underbrush or the limbs of trees; and he had also given attention to the results of discharging small or large shot from shells, and appeared to have special skill and experience sufficient to warrant the court in receiving his testimony. It may be that his opinions were not of much value, but the relative weight of the testimony was a matter for the jury to determine.

It is argued that the limb supposed to have been cut by the shot, the photographs of the landing and vicinity and the shells found near there should not have been received in evidence unless it was first shown that there was a connection between them and the killing of Lindahl at that place. There was circumstantial evidence offered which fairly tended to show that the killing was done at the landing. There was proof that Lindahl and the children went to the landing, that shots were heard in that locality, and that smoke, apparently from them, floated away. The body of Lindahl was found near there, pierced by shot of the same kind as appeared to have cut the limb or brush which was offered in evidence and which had grown six or eight feet from the landing. The other testimony, tending to show that Nordmark had the motive, was in the vicinity when the shots were fired, and had both the means and the opportunity to commit the offense, made a sufficiently close connection between the place and the accused to justify the receipt of the testimony. The nature, location and physical characteristics of the place of the killing and the conditions existing in the immediate vicinity may certainly all be offered as a part of the history of the transaction and to assist the court and jury in understanding the testimony. Photographs

which correctly represent the locality may be received for that purpose. In *State of Iowa v. Gray*, 116 Iowa, 231, it was held that cartridge shells found on the scene of the homicide might be received in evidence as a part of the history of the case, although they did not connect the defendant with the case. (See, also, *State v. Tettaton*, 159 Mo. 354; 6 Encyc. of Ev. 608.)

Nor was there error in admitting the testimony of Doctor Decker, the coroner, in regard to the condition of the bodies of Lindahl and his children. It is insisted that testimony as to the children had no bearing on the charge of killing Lindahl and was necessarily prejudicial to appellant. The shooting, according to the testimony, was a single and continuous transaction, as all the Lindahls appear to have been killed at practically the same time and by the same means. The testimony as to the children not only assisted in showing how the killing was done, but it also tended to show the plan and purpose of the accused in committing the crime charged. The fact that evidence which tends toward proving an accused guilty may also tend to prove the commission of another offense does not render it inadmissible. (*The State v. Calhoun*, 75 Kan. 259; *The State v. Hansford*, 81 Kan. 300; *The State v. Chance*, 82 Kan. 388.)

Another complaint is that the court, in denying a motion for a new trial, refused a request to state definitely and distinctly the facts and circumstances upon which the court founded its approval of the verdict. In other words, that it denied an application to make special findings of fact which in the opinion of the trial court support the verdict of the jury. Counsel frankly admits that he knows of no authority for such a practice and there appears to be no warrant for it in the statutes. It may be that such a procedure would serve a good purpose in some cases, but this court is not warranted in adding such a requirement to that prescribed by the legislature. In a few cases trial courts

have written opinions in criminal cases stating the reasons which controlled them in denying motions for new trials, but these were voluntary contributions, which the legislature does not require, and the denial of the request for such a statement or opinion can not be regarded as error. Because of the denial of this application it is inferred by appellant that only a *pro forma* decision was made, but there is nothing in the record to indicate that the court did not examine each ground presented in the motion for a new trial or that it did not exercise its independent and deliberate judgment in disposing of the motion. That the court understood the issues and fairly presented them is attested by the fact that no complaint is made of the instructions given to the jury.

One of the grounds of the motion for a new trial was newly discovered evidence, and supporting it was the testimony of a witness to the effect that on Sunday, the 27th of March, 1910, he heard a noise which sounded like the chug of a motor boat, that he only knew of three motor boats on the river, and that they were owned by Lindahl, Weber and Shivers. It is said to be material testimony, either that Lindahl was yet alive or that Weber and Shivers were in the vicinity of the Nordmark farm at that time and may have been connected with the crime. Apart from the fact that little diligence was shown in procuring the testimony of the witness, the proposed testimony is too indefinite and remote to justify a new trial. Unless the evidence is so material that it would be likely to produce a different result the court is not warranted in setting aside the verdict. The witness stated that he knew of but three boats on the river, but there may have been a number of others of which he knew nothing; but, taking the strongest inference that could be drawn from the proposed testimony, and adding to it that which was received, there is no reason to think that a jury would reach a different verdict.

The final contention is that the evidence does not sustain the verdict and judgment. Attention is called to the fact that there is an absence of direct proof that the appellant committed the offense, and also that the conviction rests mainly on circumstantial evidence. Some regard direct or positive evidence as affording greater assurance of the fact in issue, while others assert that circumstantial evidence is less easy to fabricate and more reliable; but, whatever may be the relative value of the two kinds of evidence, there is no question but that circumstantial evidence is legal evidence, and it has been held that such evidence is sufficient to prove the *corpus delicti,* including the guilty agency of the accused, and also the venue. (*The State v. Winner,* 17 Kan. 298; *The State v. Thomas,* 58 Kan. 805.) It is contended here that the circumstances established are not sufficiently strong nor so closely linked as to give any assurance that the accused committed the offense charged. A reading of the testimony satisfies us that it fairly justifies the inference that Lindahl and the children were at the boat landing at the time the three shots were heard and when the smoke was seen in the vicinity of the landing. The finding of the three empty shells and the cutting of the shrub near the landing, as well as the finding of the bodies of those killed in the places where they would naturally drift, with some other minor facts, warranted the jury in drawing the inference that the Lindahls were shot and killed at the landing on the afternoon mentioned. Then it was clearly shown that Nordmark was close to the landing at the time, and that he not only had the motive to commit the crime and had frequently threatened that he would kill Lindahl, but that on the night previous to the homicide he had openly expressed a purpose to kill him. He had the opportunity the next day, had the kind of gun and ammunition that were used, and his gun indicated that it had been recently fired.

Much is said about it being unreasonable to suppose

that the bodies and the boat floated to the places where they were found, but in view of the current of the river, the depth of the water, the obstructions and the sand bar, it is not strange that they should have drifted to the places in which they were found. Lindahl's body evidently drifted along the bank to the tree, the first obstruction it met below the landing. The boat drifted further down to a point where a sand bar had been formed, back of which there was still water. It is within reason that a boat carried along in a current without anyone to control it might, at the turn of the current, pass into the dead water behind the sand bar, and that by the action that formed the sand bar it might be gradually pushed up to the bank where it was found. Along the bank at this point are some hills and a fringe of trees that, by reason of their influence upon the prevailing high wind, may have contributed to some extent to the drifting and lodging of the boat near the shore and behind the sand bar.

The court is admonished to be careful in finally determining the guilt of the accused of so serious a charge on indirect and inconclusive evidence, but a reading of the whole testimony impels the opinion that the jury were warranted in the verdict returned. The series of circumstances, so closely related to each other and connected with facts established by direct evidence, are quite persuasive and strongly tend to prove that the accused committed the crime. The question here is only whether there is sufficient evidence to sustain the verdict, and to the jury was committed the decision as to whether that evidence was sufficiently satisfactory and convincing to warrant them in finding the accused guilty. It must be assumed that the jury were duly cautioned by the trial court not to convict on the evidence submitted unless every element of the offense was proved to their satisfaction and beyond a reasonable doubt, since the accused was satisfied with the instructions given. The law places the great responsi-

*In re* Petitt.

bility upon the jury of determining the guilt or innocence of a neighbor, and twelve men, against whom no misconduct is alleged, have decided that the accused killed Lindahl, and this decision has received the approval of the trial judge.

We find no sufficient reason to set aside the verdict and decision, and therefore the judgment is affirmed.