No. 34,849

THE STATE OF KANSAS, *Appellee*, v. JOE RAYMOND GORE, *Appellant*.

(106 P. 2d 704)

Opinion filed November 9, 1940.

*Charles B. Hudson, Roger P. Almond* and *George L. Adams,* all of Wichita, for the appellant.

*Jay S. Parker,* attorney general, *Tom Harley,* county attorney, *Robert H. Nelson, Harold A. Zelinkoff, Aubrey Grey Dresie, J. Ashford Manka* and *Dean Lachenmyer,* deputy county attorneys, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Defendant was convicted on a charge of willfully burning personal property with the intent to defraud the insurer, and appeals.

The personalty consisted of ready-to-wear clothing located in the balcony of the Ready-to-Wear Shop in the city of Wichita. The fire occurred at approximately one o'clock on the morning of April 29, 1938. It is needless to narrate in detail the escapade in which defendant was engaged, with a woman other than his wife, during the evening of April 28, and the night and morning of April 29. We shall relate only such portion of that record as appears germane to the lawsuit.

At approximately eleven o'clock p. m. of April 28, defendant left his lady guest in a car which he parked approximately a block west and one-half block south of the Ready-to-Wear Shop. He did not return until about an hour and a quarter or an hour and a half later. When he left his guest he informed her he was going to the store to get some money. When ready to leave he asked her for cigarettes and matches, which she gave him. Just before leaving, however, he returned the cigarettes, but retained the package of matches. Defendant entered the alley which runs past the south side of the shop in an easterly and westerly direction. The car in which his guest remained was stationed approximately one-half block south of the west end of that alley. She saw him enter the alley on his way to the shop. The shop has an entrance on the alley. The shop faces the east and is located on the east end of the block. His guest, after thirty or forty-five minutes, heard a fire alarm and saw several fire trucks at a point two intersections to the south. Approximately thirty minutes later she heard a second fire alarm toward the southeast of her location. Within approximately fifteen or twenty minutes after the second alarm defendant returned to the car. He came out of the same alley which he had entered when he left the car. When he returned to the car he asked his guest for a match. In response to her inquiry as to the location of the fire, she was advised it was in a hotel across the street. They returned to a night club where they remained until four or four-thirty o'clock in the morning, and defendant ultimately took his guest to Augusta, and returned to Wichita about eight a. m., on the morning of April 29. While he had been away from the car and his friend,

during the previous evening, he had been seen using a telephone in a café located across the street from the Ready-to-Wear Shop, approximately ten to fifteen minutes prior to the time the fire department answered the second alarm. The second alarm pertained to appellant's shop. It was given at 12:58 a. m., in response to a call from a call-box which was located at the north end of the block in which the Ready-to-Wear Shop was located. The first call mentioned, and which the fire department answered, concerned another place and was a false alarm. That alarm concerned a reported fire several blocks south of the place defendant had left the car and his guest.

The state's witness, C. E. Holder, concerning whose testimony there was objection, was in substance as follows: He was then (January, 1940) a captain in the city fire department and had served in the department in some capacity since 1922, eighteen years, starting as a fourth-grade private. He had held all the intermediate grades. His duties as captain of the department were to investigate the cause and origin of fires. He had served in that capacity since 1927. In the course of his service he had attended approximately 8,000 fires and had reported on the cause or origin of approximately 3,000 fires. The fire in the instant case was located in the balcony of the Ready-to-Wear Shop. The balcony runs north and south and occupies the west end of the building. When he arrived at the fire two firemen from another station were in the balcony. The building was filled with smoke and gas fumes. He made his way to the rear end of the building on his stomach and by means of a booster which forced the smoke and gas out of the way as he proceeded. He finally reached the mezzanine floor where he found the two other firemen. He discovered there a pile of some kind in the center of the floor. It was burning and the heat from it was intense. The pile was then about eighteen inches high and three and one-half or four feet across. An examination of the pile disclosed it consisted of coats, hats, dresses and papers. The papers were interspersed in the pile and around it. The fire had been burning from the bottom to the top. A hole had been burned in the floor of approximately three or more inches in size. Other places on the floor were partially burned or scorched. Some of the clothing in the pile was what is known as fast-burning fabrics and some of it as slow-burning fabrics. Some of the paper around the pile had been only partially burned. He observed, also, the condition of the clothes which were on hangers along the

sides of the balcony. They were scorched as a result of the heat from the large pile. The heat ascended and the hanging clothes were scorched from the top as the heat descended. Part of the clothing in the pile was not burned by reason of its weight when the pile settled. The reason some of the clothing had not burned was due to the fact there was no freedom of oxygen around the heavy and slow-burning clothing, after the pile settled. The fire was not caused by defective wiring. The electric ceiling fans and lights were not affected. They operated perfectly. He had an opinion as to whether the fire had been set. That opinion was based upon his experience in investigating the cause or origin of many fires and upon his investigation of this particular fire, both during and after the fire. His opinion was the fire had been set by someone. He was further of that opinion by reason of the fact that he had passed the corner where this building was located at 12:34 a. m. and there was then no smoke coming out of the top of the building. Had there been a fire when he passed the building people working there at least would have smelled the odors from the particular materials that were burning and would have turned in an alarm. Engineers or the janitors or the people on the street would have detected the odor sooner had the fire been of long duration.

The witness was interrogated on cross-examination concerning his reasons for believing the fire had been set and his reasons were in substance as follows: It was highly unusual to find a pile of clothing, of such contents and materials, stacked up in the middle of the floor; the pile contained fast and slow-burning materials; paper was interspersed in the pile and was found around the pile; the fire had not been in progress long or the odor from the burning materials would have been detected sooner by others, or he would have noticed smoke coming from the top of the building when he passed there at 12:34 a. m.; smoke would have escaped from the top of the building whether the fire was or was not set. He would not say positively the fire was set, but that was his opinion.

Appellee contends appellant conceded the witness, Holder, was an expert in his particular profession. We need not debate the question whether appellant conceded that fact. The witness was amply qualified as an expert in his field. The record discloses appellant objected to the witness stating his opinion as to whether the fire had been set. The objection was upon the grounds his opinion invaded the province of the jury and was prejudicial. Touching this

particular phase of the appeal two questions are presented. The first is, Was the opinion of the expert admissible? The second is, If the opinion was not admissible, does that fact compel reversal?

It is well to bear in mind at the outset that the admission of opinion evidence in prosecutions for arson is governed by the same rules as are applicable in prosecutions for other crimes. (2 R. C. L. 518; 4 Am. Jur. 108 [Arson], § 52.) The general rule is, if a witness has acquired peculiar knowledge or skill, by experience, observation or practice on a subject with which the mass of mankind is not supposed to be acquainted, he may give his opinion on it. (*State v. Nordmark,* 84 Kan. 628, 631, 114 Pac. 1068; *State v. Parsons,* 140 Kan. 157, 160, 33 P. 2d 1096.) It is true there is authority for the view that generally, subject, however, to exceptions, the opinion of a witness that the fire was of incendiary origin is not admissible. (2 Wharton's Criminal Evidence, 2d ed., 1680, § 956.) Appellant cites numerous decisions supporting that view.

The substance of appellee's position and contention was not only that the fire had been set, but that it had been set shortly before it was discovered. It seems to us these contentions cannot well be separated entirely, in the instant case, in determining the question of the admissibility of the expert's opinion. The evidence disclosed appellant had gone to the shop at approximately eleven p. m., on the evening of April 28. He was away from his lady companion between an hour and a quarter or an hour and a half. The alarm concerning this particular fire was given in response to a call at 12:58 a. m., April 29. Appellant was seen in a café just across the street from his shop ten or fifteen minutes prior to the alarm concerning this fire. He returned to his car ten or fifteen minutes after that alarm. It was the contention of appellee there was no outward evidence of fire in the shop at 12:34 a. m., that the fire had been in progress only a short time when the alarm was given, and that it was of incendiary origin.

When the expert witness, Holder, arrived the pile in the middle of the floor had already settled to some extent by reason of the fact the fabrics at the bottom of the pile had been burned. He stated the fire burned from the bottom up. There was no objection to that opinion. The record discloses the witness examined the burned fabrics, their location in the pile, the unique and unusual arrangement of fast-burning and slow-burning fabrics, and other materials. He named and described the fabrics which consisted of fast-burning

and those which consisted of slow-burning contents. He examined the light-weight dresses on the hangers which, in his opinion, were scorched from above by the heat as it descended from the top of the balcony. He also named the clothing which was in part slow-burning, and in part fast-burning. The ability to analyze the texture of fabrics and to state the quick or slow effect of heat upon them was definitely a matter of professional knowledge. The unique manner in which these various fabrics were arranged in the pile, in all probability, suggested far more to this experienced fireman, whose business it was to search out the cause of fires, than it did to the ordinary layman. Was his knowledge, his inference or opinion, based upon facts in evidence, and his reasons for his opinion as to the cause of the fire, to be withheld from the seekers of the truth, the triers of the fact? Could the reasons for his opinion, in addition to the mere explanation of what he found, afford assistance to the jury in determining the issue before them, and if so were they competent? In the rather early case of *Duncan v. Railway Co.*, 86 Kan. 112, 119 Pac. 356, this court referred to a much earlier case and said:

"In *Erb v. Popritz*, 59 Kan. 264, 52 Pac. 871, certain witnesses without railroad experience had been permitted to give their opinion as to the cause of a certain derailment, and this was held error on the ground, not only that the witnesses had no expert knowledge, but that the appearance of the wreck could have been easily and adequately described to the jurors so that they could have formed an opinion as readily as the witnesses. Had the structure and situation been such that the witnesses by their railroad experience were able to afford the jury any assistance in addition to that furnished by an explanation of the facts and the photograph of the bridge it would have been proper to receive their opinions." (p. 119.)

It may be conceded the foregoing were negligence and not arson cases. It is also true that there is not entire unanimity of opinion in the various jurisdictions on the subject of admissibility of opinion evidence in arson cases. In frankness it may also be said that in our own earlier decisions the strict rule against the admissibility of opinion evidence was more rigorously applied than in our more recent decisions. It will serve no useful purpose to again review the numerous aspects of the question. The complexity of the subject is conceded. However, in the recent case of *Malone v. New York Life Ins. Co.*, 148 Kan. 555, 83 P. 2d 639, it was stoutly contended a doctor should not be permitted to give his opinion as to the distance a gun was located from the head of the insured when it was discharged.

Numerous authorities were there reviewed, the conflict in authorities was recognized, and it was said:

"Distinction between facts and conclusions was involved in *Bank v. Robinson,* 93 Kan. 464, 144 Pac. 1019, and it was there said: 'The modern notion of the admissibility of evidence is that it is more important to get the truth than to quibble over impractical distinctions between facts and conclusions.' (Syl. ¶ 2.)" (p. 557.)

In *Tovey v. Geiser,* 150 Kan. 149, 92 P. 2d 3, the question pertaining to the admissibility of the opinion of experts upon the subject of which of two persons died first in a common disaster, was presented. The subject again received exhaustive treatment, and the court concluded:

"While the ordinary rule of evidence is that witnesses should not be permitted to testify to the ultimate facts which it is the province of the jury itself to decide, that rule is not strictly applied when the opinions of experts *are offered to aid the jury in reaching its decision.* (*Sillix v. Armour & Co.,* 99 Kan. 103, 109, 160 Pac. 1021; *Malone v. New York Life Ins. Co.,* 148 Kan. 555, 557, 83 P. 2d 639.)" (Emphasis supplied.) (p. 156.)

In 4 Wigmore on Evidence, 2d ed., 119, § 1923, the principle is stated thus:

"But the only true criterion is: On this subject can a jury from this person receive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally." (See, also, 3 Chamberlayne's Modern Law of Evidence, 3228, § 2375; 22 C. J. 647, § 740.)

Appellant urges the facts were so simple that the opinion or inference of an expert was unnecessary and that the jury should have been permitted to draw its own conclusion on the question of incendiary origin. It was permitted to reach its own conclusions. The jury was not obliged to accept the opinion of the witness. It was instructed it had to reach its own conclusion. Was the jury prejudiced by the opinion of the witness? If it is true that from a mere statement or description of the conditions found by the expert it was clear the fire had been set, then it is a bit difficult to see just how the opinion of the witness, if incompetent, resulted in prejudicing the substantial rights of the appellant.

While we have concluded the opinion of the witness was admissible, we may also say the judgment cannot be disturbed for another reason. While we have not attempted to narrate all the evidence, the record, without the opinion evidence, strongly indicated the fire

was of incendiary origin. It was ample to sustain the verdict. Under such circumstances we would not be justified in disturbing the verdict. (*Sawyer et al. v. State,* 100 Fla. 1603, 1617; *Tovey v. Geiser,* supra.) In 5 Encyclopedia of Evidence, 649, it is said:

"Error in the admission of expert testimony may not be ground for reversal where such testimony is merely cumulative, and there is an abundance of other evidence which is competent and which sustains the opinion of the witness. . . ."

The foregoing rule was stated and approved by this court in *Tovey v. Geiser,* supra, 159.

Numerous other errors are urged. We have carefully examined and considered each of them, but are able to find no ground for reversible error. The judgment must be affirmed. It is so ordered.