No. 44,841

VIRGINIA SURETY COMPANY, INC. and STANLEY DILLEY, *Appellants,* v. BEN SCHLEGEL d/b/a SCHLEGEL'S GARAGE, and WICHITA INSULATION CO., INC., *Appellees.*

(484 P. 2d 722)

Opinion filed December 9, 1967.

*Rodney H. Busey,* of Wichita, argued the cause, and *Lester C. Arvin* and *Kay K. Arvin,* both of Wichita, were with him on the briefs for the appellants.

*Darrell D. Kellogg,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, H. W. Fanning, Richard C. Hite, Roger M. Sherwood, Richard L. Honeyman, Thedore H. Hill* and *Mearle D. Mason,* all of Wichita, were with him on the briefs for the appellee, Ben Schlegel d/b/a Schlegel's Garage.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson* and *David W. Buxton,* all of Wichita, were with him on the briefs for the appellee, Wichita Insulation Co., Inc.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from a controversy over a bailment destroyed by fire. The bailor proceeded against the bailee and a third party, operating on the bailee's premises, in the alternative as permitted by K. S. A. 60-220 (*a*).

The petition insofar as material here alleged:

"That on or about April 22, 1963, plaintiff, Stanley Dilley's trailer was located in defendant Schlegel's Garage, and that the agents, servants and employees of the defendant Wichita Insulation Co., Inc., were working in the garage, and that on said date due to the negligence of the defendant Ben Schlegel d/b/a Schlegel's Garage or the defendant Wichita Insulation Co., Inc., or both, plaintiff Stanley Dilley's trailer caught fire causing plaintiff damage in the amount of $6,838.03."

Schlegel, the bailee, answered admitting that the trailer was located in his garage and that a fire occurred therein but that he was without information with which to affirm or deny the remaining allegations of the petition.

The Wichita Insulation Company, the third party, answered admitting that its employees worked at the Schlegel Garage at the

date alleged and that a fire occurred but denied that it or its employees were guilty of negligence which caused the fire.

A pretrial conference resulted in a comprehensive order which provided in part:

"1. The parties have agreed to be bound by the following stipulations:

"*a.* Plaintiff Stanley Dilley owned a refrigerated trailer which was damaged by fire when the trailer was located in defendant Ben Schlegel's garage at 3536 Southeast Boulevard, Wichita, Sedgwick County, Kansas, on April 22, 1963.

"*b.* Employees of defendant Wichita Insulation Company were working in the defendant Schlegel's garage on the day of the fire.

. . . . . . . . . . . .

"2. The remaining issues of fact to be determined are as follows:

"*a.* What caused the fire?

"*b.* Who caused the fire?

"*c.* Were either Ben Schlegel or Wichita Insulation Company guilty of negligence which was the proximate cause of the fire?" (The insuror's rights to subrogation are omitted as not material to the issues presented.)

At the trial the plaintiff presented testimony which we summarize at some length, as the issues present mixed questions of fact and law.

The owner and operator of the Schlegel Garage testified that he was in the garage during the day of the fire until about 7:30 P. M. Two employees of the Wichita Insulation Company were there when he left. He stated:

". . . They were working on the balcony area installing insulation in the roof. The floor of the balcony is 1 x 6 wood floor with spaces from ¼ to ½ inches between the boards. All the doors were locked on the bottom floor. Frank Myers of Wichita Insulation had a key. I was waiting for Louis Brandon, who came about 6 or 6:30 p. m. I probably did smoke the day of the fire in my office. I don't recall being in the parts room. I was in the shop area. My son secured the parts area doors. I didn't see him do it. My son was the last one in the parts room. I left around 6:30 or 7 p. m. I didn't smell smoke when I left."

Donny Cook's testimony covered the smoking of cigarettes over the parts area:

"I am an employee of Wichita Insulation and I was working at Schlegel's Garage the day of the fire with Williamson. We went up on the balcony from about 5 to 5:30 p. m. until 9:00 p. m. We took one or two breaks to smoke. We stopped to smoke together. We extinguished our cigarettes by rubbing them into a 1 x 12 plank and left them there. There were no ashtrays. I didn't check with the proprietor as to the advisability of smoking on the balcony. I didn't see any 'no smoking' signs. We took care of the ashes just like as if you were smoking out in the barn or out in the car, or outside on the sidewalk, your ashes fall off. You don't notice. You just flick them off. They fall off,

you know. I didn't smell any smoke when I left the building. After 5:30 I saw Ben Schlegel and another fellow. I saw them go into the stockroom. Neither Mr. Williamson or I was ever in the parts area."

## The City Fire Marshal testified:

". . . It is possible to determine the cause of a fire by examining the physical remains after a fire has been extinguished. Causes of fires fall into particular types of categories. Careless smoking may be one; matches; electrical wiring; appliances; spontaneous heating; rubbish accumulation, overheated grease; and overheated cooking and heating equipment. I arrived at the fire scene and determined the fire started on the first floor level in the parts room. The fire had burned longer on the first floor level and had caused the deck to collapse. In making my investigation of this fire I ruled out some of the known causes of fire. Process of elimination is one of the ways used as an aid in determining the cause of a fire. I have an opinion as to the cause of this particular fire. I checked the wiring and found nothing abnormal about it."

## Stanley J. Spingler, investigator for the City of Wichita Fire Department, testified:

"Investigation is trying to find the cause of the fire and to further investigate whatever the possibilities are. I have attended the Kansas Inspection School at Manhattan and the Arson Seminar at Norman, Oklahoma. I investigated the fire at Schlegel Garage. I arrived on the 23rd at around 2 o'clock and met Fire Marshal Longnecker and talked to Ben Schlegel and looked over the fire scene for about two hours. I came in through the reception room into the parts area and saw parts bins tipped over, burned debris, and the deck had collapsed. In my opinion the low point of a fire is the spot where the fire starts and most fires burn up and out from the low spot. You determine the low point by tracing the fire pattern back and search the fire area until you come to that by the pattern in which the fire burned. It is necessary to determine the origin of the fire before you can determine the cause. From the pattern of the burning the fire started in the first floor and traveled up the west wall of the office and it would be on the north side of the parts room, up on to the cock loft (balcony) and spread underneath the cock loft. I determined that the fire started in that area from the evidence that was found and when we cleaned out the debris, papers, and from the fire pattern. In this location we found trash cans, metal barrels, and there was debris in this barrel of burned papers, and from where this barrel was setting, the pattern was that it came from the barrel and went to the side and up. From my investigation the low point of the fire was in the area of the trash containers. After this I went to Wichita Insulation and tried to talk to the two men that worked there. They were gone and I went back to the scene of the fire and from there I went to No. 11 Station and talked to the Fire Fighters. I went back to the fire scene that evening and again looked it over. I walked through the area, up in the loft and downstairs to see if I had missed anything in the fire pattern. I did not find anything that I had missed. I continued my investigation on the 25th. Inspector Nice and I went to the scene and did an overhaul project, going through the area and moving the debris. We had shovels and moved the debris in the parts area, that is, the area around the stock books and counter area, and from that we

worked back into the aisles between the parts bins to determine the actual cause of the fire. We could find no evidence of how the fire started, but we did find evidence of where the fire started. There was nothing to indicate anything that had started the fire. After this we searched the area. I then talked to the adjuster and to the two insulation men who were working there, Cook and Williamson, to determine if they had smelled any smoke, and I asked them if they had been smoking. They stated that they did smoke but not when they were upon their ladders and board, but they always came down to the floor and smoked. I talked to Mr. Schlegel to find out what was in the area and about his idea as to what caused the fire. I found that there were papers, business papers, parts catalogs, and other items of such. I formed an opinion as to what caused the fire. Where there is no physical evidence as to the cause of a fire, we search the area trying to find out the possible causes. When I could not find any physical cause of the fire we searched the area and eliminated other things which could have been the cause of the fire, such as electric wiring which could have shorted out; oil and dirty rags which could have been piled in a pile and started; many things such as that. There was no evidence of a set fire which is arson where you pour oil over paper and touch it off. We eliminated every possible cause that we could think of that could be in that area and the possible cause. We could not eliminate careless smoking because we knew that the people who had worked in that area had smoked. We knew that the boys who were working up above, putting in the insulation, had been smoking, and other things like ashtrays and things in the office and accumulated butts on the floor throughout the building. I formed an opinion based on the process of elimination as to the cause of the fire. I formed the opinion that the fire was started by careless smoking. This opinion was based on eliminating all other causes and by knowing boys working in the area had been smoking."

At the close of the plaintiff's evidence each of the two defendants moved the court for a directed verdict. The trial court, in ruling on the motions, appears to have concluded that "it was more probable true than not true that careless smoking was the causative factor of this fire" and it can be stated from the evidence that one of the two defendants, through agents, could have been guilty of negligence. "But since these are not joint tort feasors a verdict by the jury at this point would, I believe, be pure conjecture." Both motions were sustained and plaintiff has appealed.

The appellant contends that his proof was sufficient to go to the jury as to the negligent cause of the fire by each appellee. As there is a difference in the approach, at least as to procedure, the sufficiency of the proof against each appellee will be considered separately.

The appellee, Wichita Insulation Company, suggests that plaintiff's claim is based upon negligence which is never presumed but must be established by competent evidence. Likewise, mere proof of negligent conduct does not establish a cause of action but the

negligence must be the proximate cause. It is further suggested evidence that a casualty occurred and a loss was sustained does not, when standing alone, create liability and does not justify submission of a case to a jury—citing *Smith v. Mr. D's, Inc.,* 197 Kan. 83, 415 P. 2d 251; *Fredrickson v. Mackey,* 196 Kan. 542, 413 P. 2d 86; *Holt v. Bills,* 189 Kan. 14, 366 P. 2d 1009; *Blackmore v. Auer,* 187 Kan. 434, 357 P. 2d 765; *Little v. Butner,* 186 Kan. 75, 348 P. 2d 1022; *Mills v. State Automobile Insurance Association,* 183 Kan. 268, 326 P. 2d 254.

The veracity of the above generalities cannot be questioned and appellant does not do so. Appellant counters with the suggestion that the court weighed the evidence and did not give him the benefit of the inferences which should have been drawn from his evidence. The appellee responds with the contention that appellant relies upon a pyramid of inferences capped by a pure guess and that a presumption or inference based upon a presumption or inference is insufficient to establish negligence—citing *Smith v. Mr. D's, Inc.,* supra; *Kitchen v. Smith,* 184 Kan. 188, 334 P. 2d 413; *Goodloe v. Jo-Mar Dairies Co.,* 163 Kan. 611, 185 P. 2d 158.

Here we reach the crux of the case between these two parties— is it necessary to pyramid inference upon inference to support appellant's case on the facts presented? We think not.

We will not concern ourselves with just what constitutes an inference on an inference, but rather we will examine the evidence to determine if the jury can reach a conclusion on the vital issues without indulging in mere speculation or conjecture. We are impressed with the statement in *Duncan v. Railway Co.,* 82 Kan. 230, 108 Pac. 101, which reads:

". . . An examination of the discussions upon this subject leads to the query whether there has not been much strife about words concerning it. The real question must always be whether there is substantial evidence, direct or circumstantial, fairly tending to prove the fact in issue. Presumptions, as understood in the law of evidence, must have substantial probative force as distinguished from surmise. If a fact may be established by inference from the presumption of another fact, it should at least be a logical deduction and reasonably certain in the light of all other proper presumptions and of all collateral facts. The chain of presumptions ought not to be extended into the region of conjecture. . . ." (p. 233.)

We are also impressed with the statement in 29 Am. Jur. 2d, Evidence, § 166, p. 205, as follows:

". . . Many decisions, however, disclose that when the court seeks to apply the rule forbidding the basing of one inference upon another, what is

meant is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. . . ."

We do not find the evidence to be so uncertain or speculative in this case. Briefly reviewing we find that the damage to the trailer in the garage by fire was a positive fact. The fact that the fire started in the parts department is quite positive. Eliminating all other possible causes it would appear that the fire was started by the careless smoking of a cigarette. This may be an inference but it is rather a definite one. It is also supported by the opinion of an expert. An inference which is drawn by a witness with special technical experience is to be weighed with positive or factual testimony. We find the general rule thus stated:

"Generally, as between the evidence of a skilled and that of an unskilled witness of phenomena of a technical nature, the greater weight lies with the skilled observer. An inference which is drawn by one with requisite experience from adequate data *is evidence of equal value with so-called fact testimony;* . . ." (32 C. J. S., Evidence, § 568 (1), p. 582. Emphasis supplied.)

This court has held that an expert may give his opinion as to the origin of a fire in an arson case. In *State v. Smith,* 173 Kan. 807,. 252 P. 2d 917, it is stated:

"Further, it is contended the court erroneously permitted the former deputy state fire marshal to testify that in his opinion the fire was of incendiary origin. No objection was made to this testimony, but even had there been it would not have been good. The witness qualified himself as an expert on the subject matter, and his testimony was admissible. (*State v. Gore,* 152 Kan. 551, 106 P. 2d 704, 131 A. L. R. 1108.)" (p. 813.)

*State v. Gore,* supra, dealing with an arson case, states the rule:

". . . The general rule is, if a witness has acquired peculiar knowledge or skill, by experience, observation or practice on a subject with which the mass of mankind is not supposed to be acquainted, he may give his opinion on it. (*State v. Nordmark,* 84 Kan. 628, 631, 114 Pac. 1068; *State v. Parsons,* 140 Kan. 157, 160, 33 P. 2d 1096.) . . ." (p. 555.)

The weight to be given the testimony of an expert is a matter for the consideration of the jury but the testimony of a qualified expert is sufficient to make a *prima facie* case.

"The weight of the testimony of experts as to the nature, condition, or relation of objects is to be determined by the trier of the facts, as is their credibility; and their testimony may be considered in the light of common knowledge and experience. Where the witness is well qualified, his opinion may be entitled to considerable weight, sufficient to make a prima facie case, to justify submission of an issue to the jury, or to support a verdict, finding, or judgment; but the opinion is not conclusive." (32 C. J. S., Evidence, § 569

(9), p. 642. See, also, *Cherry v. State Automobile Insurance Association,* 181 Kan. 205, 310 P. 2d 907; *Myers v. Shell Petroleum Corp.,* 153 Kan. 287, 110 P. 2d 810.)

The question remains—who was carelessly smoking the cigarette? The employees of the appellee, The Wichita Insulation Company, were working above the parts department. They were on a balcony flicking ashes onto one by six inch boards with ¼ and ½ inch cracks in between. It may require an inference or an assumption to find that an employee of the insulation company was the party guilty of carelessly or negligently handling the cigarette. However, there are rather substantial facts to support the inference.

It might further be suggested that the fact that there are several inferences to be drawn in a single case is not objectionable as long as each has a factual foundation. In *Broyles v. Order of United Commercial Travelers,* 155 Kan. 74, 122 P. 2d 763, we held:

"The rule that inferences based on other inferences are not sufficient to meet the burden of proof has no application to different inferences made from an admitted or proven fact or state of facts. As many inferences may be drawn from a fact, or state of facts, as it will justify, so long as each has a factual foundation." (Syl. 6.)

Applying the rule that as against a motion for a directed verdict all evidence must be considered in favor of the opposing party and all inferences must be considered in favor of the party adducing the evidence (*Baker v. Western Casualty & Surety Co.,* 196 Kan. 345, 411 P. 2d 711; *Gardner v. Pereboom,* 197 Kan. 188, 416 P. 2d 67) we are forced to conclude that the motion for a directed verdict on behalf of the Wichita Insulation Company should not have been sustained.

As we approach the controversy between the appellant (bailor) and the appellee (bailee), we find ourselves confronted with procedural rather than substantive questions of law, *i. e.,* presumptions and burden of proof.

It appears to be the very general rule that when the bailor shows that the property was delivered to the bailee for hire and the bailee has failed to return the thing bailed, a *prima facie* case is made out against the bailee and he must come forward with proof of loss free from negligence on his part. (43 A. L. R. 2d 412.)

From this point on the authorities are not in accord. Many authorities hold that the bailee need only show destruction of the bailed property by fire to overcome the bailor's *prima facie* case.

Other modern authorities hold that the bailor makes out a *prima facie* case when he proves loss of the property by fire while in the possession of the bailee—this on the theory that the bailee still has the obligation to establish due care. (8 Am. Jur. 2d, Bailments, §§ 315 and 316, p. 1202.)

This court appears to follow the latter theory. In *Wiley v. Locke*, 81 Kan. 143, 105 Pac. 11, we state at page 147:

". . . When the appellee proved that he had intrusted his goods to the appellants, who were unable to return them because they were burned, it then devolved upon the appellants to show that the loss did not occur through any want of care on their part. A warehouseman is not an insurer of goods received for storage, nor is he required to provide a building secure against all danger from outside risks. The law does require that he shall exercise due care and reasonable precaution to protect and preserve property placed in his custody; that is, such care as an ordinarily prudent person engaged in that business is in the habit of exercising toward property intrusted to him for safe-keeping. . . ." (See, also, *Strange v. Price Auto & Service Co.*, 169 Kan. 98, 218 P. 2d 208.)

The appellee calls our attention to the rule that when proof of lack of negligence affirmatively appears from plaintiff's (bailor's) testimony, the necessity for that proof by the defendant (bailee) is obviated. It would be difficult to quarrel with the rule so announced. However, we do not see where it has any application here. The plaintiff introduced expert testimony, based on adequate data, that the fire was caused by careless smoking. There has been no evidence that the bailee exercised due care. The best that can be said for the bailee is, there was an inference that the employees of the insulation company were the careless smokers. Evidence of some other possible cause of the fire does not refute the presumption of lack of due care or negligence on the part of the bailee. In *Jones v. Warner*, 57 Wash. 2d 647, 359 P. 2d 160, 92 A. L. R. 2d 1404, where the court had under consideration an action by a bailor for damages to an automobile, we find the following statement:

"It is not the law, as contended by the appellant, that he has sustained his burden of proof when he has produced evidence that the damage possibly could have resulted from some cause other than his negligence. In order to make a *prima facie* case, a plaintiff is not required to show that a cause other than negligence could not possibly have produced the damage; consequently, if the plaintiff's evidence has shown to the satisfaction of the court that the damage could not ordinarily occur without negligence, a defendant cannot rebut the presumption by merely introducing evidence of some other possible cause." (p. 649.)

We must also give consideration to K. S. A. 60-220 (*a*) which provides:

". . . All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the *alternative,* any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. . . ." (Emphasis supplied.)

Where parties have been joined in the alternative the court has discretion not to require the plaintiff to elect among them that he is entitled to have the cause submitted as to all defendants. A defendant is entitled to a directed verdict only if as a matter of law plaintiff's evidence prevents a verdict against him. In *Metrakos v. New York Cent. R. Co.,* 12 F. R. D. 177, the federal court, in dealing with a similar rule, stated at page 178 of the opinion:

"Plaintiff is entitled to join in one action all persons against whom he asserts a right to relief jointly, severally, or in the alternative. Rule 20. One properly joined as a defendant may gain his dismissal only by showing that as a matter of law, upon facts concerning which there is no genuine issue, plaintiff may not recover from him. Rule 56."

We cannot say at this juncture of the case that a showing has been made which would absolve the bailee of all charges of lack of due care as a matter of law. At this juncture no showing has been made which would foreclose plaintiff from maintaining the action against both defendants.

The judgment is reversed with instructions to grant a new trial.

APPROVED BY THE COURT.