No. 45,618

STATE OF KANSAS, *Appellee,* v. C. C. (MONTE) PARRISH, *Appellant.*

(468 P. 2d 143)

Opinion filed April 11, 1970.

*Robert Martin,* of Martin, Porter, Pringle, Schell and Fair, of Wichita, argued the cause, and *William V. Crank,* of Wichita, was with him on the brief for the appellant.

*Donald H. Humphreys,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *Larry E. Keenan,* Special Assistant County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: The defendant, C. C. Parrish, was charged with, and convicted of, burning insured property, the Parrish Hotel, Great Bend, Kansas, and the burning of the personal property of another.

On Sunday, October 8, 1967, a fire destroyed the Parrish Hotel.

The hotel was owned by the defendant who was in Washington, D. C. on business the night the hotel burned.

The evidence connecting Parrish with the burning consisted largely of hearsay testimony of four principal witnesses. As the appeal challenges the propriety of this testimony it must be reviewed at some length.

The testimony of Sharyn Patterson was summarized in the record. We present it here in part:

"She had known C. C. 'Monte' Parrish and Kenneth Christendon for about seven years. She dated Ken Christendon in January, February, May and July, 1967, and moved to Great Bend in August of 1967. She and Christendon were supposed to get married. She and Christendon shared apartment A in the Zahra Hotel in Great Bend with her 10-month old daughter. The Parrish Hotel and Zahra Hotel are located on the same block. She and Christendon lived together in Apartment A until the latter part of September. She then moved to Room 318 and he moved to Room 321 in the Zahra. They had decided not to get married. During this time Christendon was employed by Mr. Parrish. She was employed by Mr. Parrish at the Golden Belt Grill. . . .

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Mrs. Patterson testified that in December, 1966, or January, 1967, Kenneth Christendon told her that Mr. Parrish had told Christendon that Parrish would like to have Christendon burn the Parrish Hotel and to get rid of it for him because he needed the insurance money from it to get back on his feet. This testimony was allowed over the objection of defendant that it called for hearsay testimony.

".    .    . She did not have any conversations with Mr. Parrish. Any conversations she had were with Christendon who related what Mr. Parrish told him. . . . *In the early hours of Sunday morning, October 8, 1967, Christendon told her, while they were in his room, that Ahlf was going to help him burn the hotel down and that they were going to do it Sunday evening.* Christendon said he was going to give Ahlf half of what he received for burning the hotel. At the time of this conversation, Christendon was very, very drunk —on the verge of passing out.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Christendon and Ahlf decided they would have to purchase some gasoline. She suggested that she go get the gasoline. She and Phyllis Harned Ahlf purchased the gasoline at Mering's Mobil Station. She testified that they purchased a five-gallon can of gasoline and charged it to the account of C. C. Parrish by signing Kenneth Christendon's name on the ticket. . . .

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Between 8:15 and 8:30 p. m. on October 8, 1967, Christendon and Ahlf left the apartment. Ahlf asked Phyllis Harned Ahlf for a bucket of some kind to put gasoline in. They were gone approximately 15 or 20 minutes. *When they returned, one of the men stated, 'Well, we did it'.* . . .

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Within a day or two following the fire, Christendon went to Wichita to

pick up Mr. Parrish. Christendon was gone overnight. When he returned, he told her that Mr. Parrish just shook his hand real hard and said he did a good job. . . ." (Emphasis supplied.)

The testimony of Thomas Ahlf was also summarized in the record and we present it here in part:

". . . He came to Great Bend in August of 1967, with the R. H. Fulton Contractors, a pipeline company. He left Great Bend for about 2 weeks, then returned to live with Phyllis Harned and her four children whom he now considers his wife, even though they have not been married.

"He met Kenneth Christendon around the 1st of October, 1967, in the tavern called The Place, operated by Phyllis Harned Ahlf. He saw Christendon every day from October 1 until the night of the fire on October 8. Five or six days before the fire, Christendon offered him half of $5,000.00 if he would help burn down the Parrish Hotel. Christendon said Parrish offered Christendon the $5,000.00. Defendant's objection that the reference to Mr. Parrish was hearsay and leading was overruled.

"The night after their first discussion, Christendon and Ahlf discussed plans for burning the hotel. They decided to burn the hotel on a Sunday evening so fewer people would be in the hotel. Christendon suggested starting the fire in the furnace room by saturating rags in gasoline and hanging them in front of the furnace. They decided to do it Sunday, October 8, because the wind had died down and they did not want to burn up the whole block.

"On Saturday, October 7, he tended bar at the tavern, The Place, and after closing, Phyllis Harned Ahlf, Sharyn Patterson, Christendon, and he got a couple cases of beer and rode around and drank. . . . He and Christendon together drank 2 or 3 cases of beer between Saturday night and early Sunday morning.

"On the evening of Sunday, October 8, 1967, he was in Apartment A together with Phyllis Harned Ahlf and her children, Sharyn Patterson, and Christendon. About 8:30 he told Phyllis Harned he wanted a plastic bucket to wash the car. He and Christendon left the apartment, got into Phyllis Harned Ahlf's car, and sat there for about 10 minutes, planning the fire. They then drove around the block into the alley behind the Parrish Hotel. They got the five-gallon gas can out of the car and emptied the contents into a two gallon plastic bucket. They then entered the back door of the Parrish Hotel, went down into the furnace room in the basement. Ahlf testified as to the steps he and Christendon went through in throwing the gasoline into the ceiling joists, soaking a rag in gasoline and hanging it in front of the open furnace door, throwing gasoline around on the floor, and then Christendon's igniting the fire by throwing a match back into the room as they started up the stairway. The fire started with sort of a swoosh. It did not explode.

. . . . . . . . . . . . . . . . .

"Ahlf testified that Christendon told him that Mr. Parrish told Christendon that the way they had burned the Parrish Hotel was a $10,000 job. Christendon told Ahlf he was going to give Ahlf $5,000.00. Ahlf testified that he received a 1968 Plymouth Roadrunner, $200.00 cash, and checks amounting to $450.00,

on the 21st of December, 1967, in lieu of the $5,000.00 he was to be paid for his part in the burning of the hotel.

"On December 19, 1967, he told Christendon that he was ready to leave for California and wanted a new car. He was going to California to see his folks for Christmas. Ahlf testified that on that same night he had a conversation with Mr. Parrish. The conversation occurred in Mr. Parrish's car in a field near Christendon's trailer. Mr. Parrish asked him what his intentions were and Ahlf told Mr. Parrish he was going to California to see his folks and from there to Montana to work for his former employer, R. H. Fulton, Contractors. On the night of December 19, he told Mr. Parrish he wanted a car and Mr. Parrish said it would take a couple of days before he could get it. The cost of the car was $3,195.00. Mr. Parrish told Ahlf that he would make up the difference between the cost of the car and the $5,000.00, but it would have to be worked out so Mr. Parrish would have some way of showing where it went."

Sharon Cole's testimony was placed in the record in question and answer form. We summarize:

Sharon and Kenneth Christendon were married in July, 1960. They separated in April or May, 1967, and were divorced August 11, 1967. In the spring of 1967, she had a conversation with Mr. Christendon concerning the destruction of the Parrish Hotel. On request to state to the jury what was said in the conversation, she stated:

"Yes, he came in and he sat down at the table and he said he had been talking to Mr. Parrish. He said they had been talking about the hotel, and that it was about the time of the year, I think, when the inspector came around, and it was to be condemned, and he said it would be a good way—it would be all right if there would be something could happen to get it out of the way, and I thought he was just fooling, but he said it would be a good idea for a fire or something to happen to it, to destroy it and get it out of the way, so it would relieve a lot of bother and pressure there and worry."

*Christendon further stated to Sharon in the conversation that there would be a profit coming to him from Parrish.*

Sharon further testified that she had another conversation with Christendon about destroying the Parrish Hotel in September, 1967. She met him in Pratt, Kansas where he was working for Parrish at Christendon's suggestion that they talk about a reconciliation. The best that Sharon could recall he said:

"A. *Well, he said that he would get a chance as soon as he did away with the hotel. He said he was going to pick a time when Mr. Parrish was out of town, and he wouldn't be—he wouldn't be suspected in that sense, and he would have the money, and he had an idea about going off to Australia.* That he had talked to somebody that worked on the pipeline, and he said they paid to go there, and we could pay off the debts and get a fresh start as soon as this job was done and he collected the money.

"Q. Do you recall if on that occasion any amount of money was mentioned?

"A. He said, $10,000.00." (Emphasis supplied.)

After the conversation with Christendon at Pratt, Kansas, she went home to her mother and told her about the conversation. Her mother told her to "stay out of it, to stay away from it, and she did."

Sharon Cole testified that in March, 1968, she was drinking at a private club in Great Bend, the DAV. At this time she was very unhappy with her former husband, Kenneth Christendon, and she recounted her conversations with Christendon concerning the burning of the Parrish Hotel to Wilbur Root, a Great Bend fireman, who was also at the DAV Club.

The cross-examination of Sharon will be presented when we discuss the issue in which it is involved.

The defendant lodged objections to the hearsay testimony of the witnesses Sharyn Patterson and Sharon Cole, and continues his objections on appeal. The trial court admitted the testimony under the authority of K. S. A. 60-460 (j) which provides:

"(j) *Declarations against interest.* Subject to the limitations of exception (f), a statement which the judge finds was at the time of the assertion so far contrary to the declarant's pecuniary or proprietary interest or so far subjected him to civil or criminal liability or so far rendered invalid a claim by him against another or created such risk of making him an object of hatred, ridicule or social disapproval in the community that a reasonable man in his position would not have made the statement unless he believed it to be true;"

The appellant does not challenge the validity or effect of the above provision but contends—

"The testimony of Sharon Patterson as to her conversation with Christendon in December, 1966, and those in September, 1967, and the testimony by Sharon Cole of her conversations with Christendon in the spring of 1967 and also in September, 1967, is not admissible under this exception to the rule. There is no testimony by any witnesses that Christendon told anybody that he was, in fact, going to burn the hotel prior to his conversation on October 2 or 3 with Tom Ahlf in which he allegedly asked Ahlf to help him. The testimony of Patterson and Cole as to their respective conversations was to the effect that Parrish would like to have Christendon burn the hotel and Christendon would be paid for it. They did not testify that Christendon said he was going to do it. Nothing that Christendon said on these occasions was a declaration against his interest, and that is the test under subsection (j). . . ."

The appellant does not challenge the admissibility of the testimony of Thomas Ahlf. We must conclude that the objection made to the testimony of Sharyn Patterson and Sharon Cole is not valid.

We cannot agree with appellant's suggestion that they did not testify that Chritsendon said he was going to burn the hotel. We find quite the contrary. We have set out the testimony of these two witnesses at some length and underscored that part where Christendon made the derogatory statements against his interest. It would serve no useful purpose to repeat them at this point. We must conclude that the statements made to the two witnesses by Christendon subjected him to criminal liability if the hotel burned and created a risk of making him an object of hatred, ridicule and social disapproval in the community.

We find nothing objectionable in the admission of testimony of the preliminaries and circumstances leading up to and surrounding the making of the assertion against the declarant's interest.

There was no error in the reception of the hearsay testimony.

The appellant next suggests—

"The admission of the testimony of Mrs. Shelby Johnson is undoubtedly the primary issue involved in this appeal. This is not to say that the other errors complained of are unimportant, but the admission of her testimony was extremely prejudicial to the defendant and greatly affected the outcome of the case and was a critical error by the court below."

Mrs. Shelby Johnson testified, on rebuttal for the appellant, that when her daughter, Sharon Cole, returned home from Pratt where she had talked with Christendon, it was about one o'clock at night. She further testified:

"Q. Were you asleep or awake?

"A. No, I was still up.

"Q. At that time did you have any conversation with her concerning her conversation with Mr. Christendon?

"A. Yes. She said she would like to talk to me, and I told her, 'All right.' And she said she had been to Pratt to talk to Kenny, and that he was wanting her to come back to him, and she said she told him that they owed too many bills, and too many things had happened, and she just didn't see how they could do it.

"Q. All right, was anything said by her as to conversation between them concerning the Parrish Hotel?

"A. Yes. She said that while they were talking that Kenny said that whenever he succeeded in getting the hotel burned he would get a sum of money, approximately $10,000.00, and well, with that they could pay their bills and could go to Australia and start a new life."

It is conceded by the appellee that the sole purpose of the testimony of Mrs. Johnson was to bolster the testimony of Sharon Cole.

Both parties rely on State v. Fouts, 169 Kan. 686, 221 P. 2d 841, where we held:

"The general rule is that prior statements of a witness, consistent with his testimony at the trial, are not admissible in corroboration of his testimony unless he has been impeached or his credibility as a witness has been attacked." (Syl. ¶ 4.)

We must look to the record to determine the issue. Was Sharon Cole impeached or her credibility as a witness attacked?

On cross-examination Sharon's chastity was questioned for the purpose of attacking her credibility. The following was elicited on cross-examination:

"After work once or twice, while she was still married to Christendon, she went to the home of the police officer she was dating.

"Prior to the summer of 1967 she dated a Frankie Turner who was about nineteen years old. She also occasionally went out with an Earl Allen who was about forty-five years old. At the time of the trial Mrs. Cole was 25 years old. . . ."

Appellant's counsel also cross-examined Sharon at some length as to her testimony on the witness stand and what she had told the fireman when she reported the cause of the fire. It appears that she had told the fireman Christendon was to receive $5,000.00 and in her testimony at the trial she mentioned $10,000.00.

Sharon further testified on cross-examination:

"Q. Now, you say that at the time you were out at the DAV Club, you discussed this matter with Mr. Root?

"A. Yes sir.

"Q. You were mad at your husband?

"A. Yes, sir.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. During the times that you say these conversations occurred between you and your husband, did you ever tell your husband that you were going to report these to the authorities at any time?

"A. No.

"Q. When you say your husband and you were discussing reconciliation in the late summer or early fall of 1967, and this came up about taking the $10,000.00 and going to Australia, did you tell him you didn't want to have any part of that?

"A. No, sir."

We are forced to conclude that the facts established on cross-examination did tend to impeach the credibility of Sharon and attack her credibility. The corroborating testimony of Mrs. Shelby Johnson was therefore admissible to rehabilitate or support the witness.

The appellant objects to the testimony of the appellee's expert witness, one of the firemen present when the hotel burned. The

fireman based his opinion that the fire was of an incendiary nature solely upon his observations while he was on duty at the fire.

The appellant contends that observation of the fire itself, without more, is insufficient to enable an expert to express an opinion as to the cause of the fire. This argument may be proper in considering the weight of the testimony but not admissibility. In *State v. Gore*, 152 Kan. 551, 106 P. 2d 704, we stated at page 555 of the opinion:

"It is well to bear in mind at the outset that the admission of opinion evidence in prosecutions for arson is governed by the same rules as are applicable in prosecutions for other crimes. (2 R. C. L. 518; 4 Am. Jur. 108 [Arson], § 52.) The general rule is, if a witness has acquired peculiar knowledge or skill, by experience, observation or practice on a subject with which the mass of mankind is not supposed to be acquainted, he may give his opinion on it. (*State v. Nordmark*, 84 Kan. 628, 631, 114 Pac. 1068; *State v. Parsons*, 140 Kan. 157, 160, 33 P. 2d 1096.) . . ."

The appellant complains because the trial court denied his motion for a change of venue.

The appellant submitted but seven affidavits in support of his motion. Of the 75 jurors sworn and empaneled only 32 were dismissed for having formed an opinion. It appears there was no difficulty in obtaining a jury from the other 43 empaneled. It also appears that counsel for appellant spent 12 days interviewing people in Barton County to obtain the seven affidavits mentioned. Counsel for appellee in less than five hours obtained twenty-three affidavits stating that the appellant could receive a fair trial in Barton County.

A motion for change of venue is addressed to the sound discretion of the trial court. (*Krehbiel v. Goering*, 179 Kan. 55, 293 P. 2d 255; *Ferrellgas Corporation v. Phoenix Ins. Co.*, 187 Kan. 530, 358 P. 2d 786.) We find nothing which would support the claim of prejudice in not granting a change of venue.

The appellant complains of the trial court's failure to give the following instruction:

"In determining the weight and credit to be given a testimony of an admitted accomplice, the jury should exercise caution and receive such testimony with care."

The trial court refused to give the instruction, stating:

"This request is denied on the belief that the credibility-of-witnesses instruction that the court is giving is adequate as a measure for the jury to use in testing the testimony of any of the witnesses. The court would rather not pinpoint particular witness's testimony to the jury if it can be avoided. To give the instruction requested by Mr. Martin would, in effect, be encouraging the jury to use a stricter test of credibility as to witnesses Sharyn Patterson,

Sharon Christendon Cole, and Thomas Ahlf, and arguably, even as to their own witness, Kenneth Christendon. I do not believe I should do that."

The credibility of witness instruction given by the trial court was as follows:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use that knowledge and experience which you possess in common with men in general, in regard to the matter about which a witness has testified. You may take into account his ability and opportunity to observe and know the things about which he or she has testified, his memory, manner, and conduct while testifying, any interest he may have in the result of this trial, and the reasonableness of his testimony, considered in the light of all the evidence in this case."

This question was discussed at considerable length in *State v. Wood*, 196 Kan 599, 413 P 2d 90, where we held:

"In the trial of a criminal action, failure of the court to instruct the jury that the testimony of an accomplice should be considered with caution does not constitute reversible error when the testimony of the accomplice is fully corroborated and amounts to merely cumulative evidence and where the jury was instructed as to their duty to consider the weight of evidence and credibility of witnesses." (Syl. ¶ 2.)

The necessity for many of these tautological instructions is losing force when a case is being considered by our present enlightened jurors. In *State v. Miller*, 83 Kan. 410, 111 Pac. 437, we said:

". . . Without such an instruction a jury of ordinary intelligence would naturally receive with caution the testimony of a confessed accomplice. . . ." (p. 412.)

A careful examination of the record discloses no trial errors which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.